# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARIO A. LEGGS #302694, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) NO. 3:16-cv-02069 |
| | ) CHIEF JUDGE CRENSHAW |
| KEVIN GENOVESE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

The *pro se* Petitioner is a state inmate in South Central Correctional Facility in Clifton, Tennessee, serving several terms of incarceration arising from his 2001 conviction for eight felonies ranging from aggravated robbery to reckless endangerment. He alleges that the Tennessee Department of Correction (TDOC) has miscalculated his sentences and seeks a federal writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court will deny his petition for the reasons that follow.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On November 29, 2001, Petitioner was convicted in Davidson County of eight felony counts of a multiple-count indictment in case 2001-A-273 and was sentenced as follows:

- Count 2 – robbery – 6 years

- Count 3 – reckless endangerment – 2 years

- Count 4 – aggravated robbery – 12 years

- Count 5 – evading arrest – 3 years

- Count 6 – reckless aggravated assault – 4 years

- Count 7 – reckless aggravated assault – 4 years

- Count 8 – reckless aggravated assault – 4 years
- Count 9 – reckless endangerment – 2 years

(Doc. No. 22-2 at 7–14.) He was also convicted and sentenced for several misdemeanors as part of the same case.[1] The special conditions on the judgments indicate that "counts 1, 2, 4, 6 and 12 are consecutive, the other counts are concurrent," and that the result is a "total sentence 22 years + 11[months]/29 [days] @ 75% + 11[months]/29 [days] @ 75%." (Id. at 7, 9.) The Tennessee Court of Criminal Appeals reversed Petitioner's conviction on Count 12 for evading arrest, which eliminated one of the 11-month 29-day sentences, and left his total effective sentence at 22 years, 11 months and 29 days. State v. Leggs, No. M2002-01022-CCA-R3CD, 2003 WL 21189783, at *1, 11 (Tenn. Crim. App. May 21, 2003). Both parties have confined their presentations to the cumulative 22-year felony sentence (reached by adding the 6, 12 and 4 year sentences for Counts 2, 4 and 6 above, respectively, which were ordered to run consecutively), so the Court presumes the remaining misdemeanor sentence is not at issue in this case.

Petitioner entered TDOC custody on December 6, 2001, and began serving his 6-year sentence for Count 2, along with all the shorter sentences ordered to run concurrently with it. (Doc. No. 22-2 at 2, 3.) He was released on parole on August 20, 2010, and returned to custody on July 31, 2012, for violating parole. (Id. at 2.) He was released again on April 4, 2013, and returned to custody on October 15, 2014, for another violation. (Id.) On January 8, 2015, Petitioner was

---

[1] Neither party has submitted the judgments for counts 1, 10, 11 or 12. The Tennessee Court of Criminal Appeals (TCCA) on Petitioner's direct appeal indicated that he was also convicted of one count each of theft, leaving the scene of an accident and driving on a suspended license, and of a second count of evading arrest. Id. at *1. The TCCA calculated Petitioner's original total sentence to have been 23 years, eleven months and 28 days. Id. It reversed Petitioner's conviction on the second count of evading arrest – count 12 – for which he had received a consecutive sentence of 11 months and 29 days, and modified his sentence to 22 years, 11 months and 29 days. Id. at *11.

convicted of a new count of attempted sale of a schedule I drug, and was sentenced to another 4 years in prison, to be served consecutive to his 2001 sentences. (Doc. No. 22-2 at 15.)

The trial court had not awarded any pretrial jail credit toward Petitioner's sentence at the time it sentenced him in 2001, but on February 3, 2015, it retroactively awarded him pretrial jail credit for the period he spent in jail awaiting trial from November 17, 2000 to November 29, 2001. (Doc. No. 22-2 at 2, 16.) This change required the Tennessee Department of Correction (TDOC) to recalculate Petitioner's felony sentences and the way the prisoner sentence credits he had been accumulating in prison had been applied to them.

Petitioner disagreed with the manner of that recalculation. After failed attempts to get relief from the TDOC, both informally and via petition for a declaratory order (see Doc. No. 2-1 at 2–21), Petitioner submitted a petition for declaratory judgment to the Davidson County Chancery Court. That court returned his petition unfiled on April 28, 2016, due to Petitioner's unpaid fees and court costs from previous litigation. (Doc. No. 2-1 at 22.)

Meanwhile, Petitioner was denied parole on February 23, 2016 (Doc. No. 2-2 at 8), and also administratively challenged that decision. The Tennessee Board of Parole rejected his appeal on July 11, 2016. (Doc. No. 2-2 at 2.) He filed the present action by delivering it to the prison mail room on August 3, 2016. (Doc. No. 2-3.)

## II. ANALYSIS

Petitioner seeks relief pursuant to 28 U.S.C. § 2241, which provides in pertinent part that "The writ of habeas corpus shall not extend to a prisoner unless . . . He is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3). The Sixth Circuit has held that "when a prisoner begins in the district court, [28 U.S.C.] § 2254 and all associated

statutory requirements . . . apply no matter what statutory label the prisoner has given the case." Greene v. Tenn. Dep't of Corr., 265 F.3d 369, 371 (6th Cir. 2001) (quoting Walker v. O'Brien, 216 F.3d 626, 633 (7th Cir. 2000)). Accordingly, Petitioner would ordinarily be required to exhaust his state remedies before presenting his claims to this Court, even though he has invoked § 2241 rather than § 2254. Hill v. Qualls, No. 3:13-cv-00099, 2013 WL 1666740, at *4 (M.D. Tenn. April 17, 2013) (holding that the Court was precluded from reviewing state inmate's sentence calculation claim due to his failure to exhaust state remedies).

In this case, however, Petitioner's attempt to obtain state court review of his claims was rebuffed due to his inability to pay court fees, and Respondent has not asserted failure to exhaust as an issue. A *de novo* review of Petitioner's claims plainly establishes that this case fails on its merits regardless of whether the claims might be considered procedurally defaulted. It is thus unnecessary for the Court to analyze the legal effect of the state court's refusal to allow Petitioner to exhaust.[2] See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Hudson v. Jones, 351 F.3d 212, 216 (6th Cir. 2003) (proceeding directly to merits analysis because "the question of procedural default presents a complicated question . . . and is unnecessary to our disposition of the case"); Ferensic v. Birkett, 451 F. Supp. 2d 874, 887 (E.D. Mich. 2006) (performing *de novo* review of unexhausted habeas claim because "it is easier to address the merits of Petitioner's claim than to perform a procedural default analysis").

---

[2] The Court notes that the United States Court of Appeals for the Sixth Circuit has held Tennessee Code Annotated § 41-21-812, Tennessee's statute preventing inmates with unpaid fees from filing new claims in state court, unconstitutionally blocks access to the courts when applied to inmates asserting liberty interests, and therefore "cannot be considered an adequate and independent ground for denying review." Clifton v. Carpenter, 775 F.3d 760, 767 (6th Cir. 2014).

4

## A. Sentence Calculation

The TDOC Director of Sentence Management Services, Candace Whisman, has explained by affidavit that Prisoner Sentence Reduction Credits (PSRC) are awarded for good behavior and program participation in prison. (Doc. No. 22-2 at 1.) Tennessee law authorizes the award of up to 8 days each of behavior and program credits, for a total maximum of 16 PSRC per month served. Tenn. Code Ann. § 41-21-236(a)(2)(A). That credit "results in a reduction of the amount of time an inmate must serve on the original sentence or sentences." § 41-21-236(j). Consequently, when an inmate earns credits while serving his sentence, the combination of days served and credits earned will cause the sentence to expire or "flatten" at some point before the original expiration date of the sentence. See Bond v. State, No. M2011-02223-CCA-R3PC, 2012 WL 3776677, at *1 n.1 (Tenn. Crim. App. Aug. 31, 2012) (noting that an inmate "would have a 'flattened' sentence, i.e., he would serve 100% of his sentence less sentence credits earned and retained"). For example, an inmate sentenced to 12 months who earns a hypothetical maximum of 15 credits per month[3] will flatten his sentence in only approximately 8 months, because by the end of 8 months he will have earned 120 days or approximately 4 months of additional credit toward his sentence.

Ms. Whisman has explained that such "credit applies to the currently active *sentences* at the time the sentence reduction credit is earned and would not apply to consecutive sentences that are not being served at that time." (Doc. No. 22-2 at 1 (emphasis added).) This fact has two consequences relevant to this case. First, such credits do not affect the calculation of a consecutive sentence an inmate has not yet begun to serve. (Id.) Accordingly, if the hypothetical inmate who

---

[3] As mentioned above, Tennessee law actually allows inmates to earn up to a maximum of 16 days per month combined for behavior and program credits, but the Court utilizes this figure to simplify the demonstration.

flattens his 12-month sentence in 8 months has another 12-month sentence consecutive to that one, he does not begin to earn credit toward the second sentence until he begins to serve it, after flattening the first one. Second – and it appears that this point may be the source of Petitioner's confusion – the same credits are simultaneously applied to every sentence being served at the time they are earned. So if the same hypothetical inmate is serving sentences of 6 and 9 months concurrent with his first 12 month sentence,[4] the 15 credits he earns each month will be applied to all three of those sentences until each of them is flattened. At that rate, the 6 month sentence would be flattened in approximately 4 months, and the 9 month sentence would flatten in approximately 6 months, because his 15 credits per month would be factored into the computation of each sentence. The inmate only earns 15 credits per month, even though their appearance in three different computations on his monthly sentence calculations for each individual sentence might make him believe he has earned a total of 45 credits per month. And ultimately, those shorter concurrent sentences and their calculations are immaterial to the inmate's effective sentence; he cannot be released or begin serving his next consecutive sentence until the longest of the concurrent sentences is flattened.

That roughly explains, albeit with hypothetical figures, how Petitioner's sentences were calculated up until the retroactive award of pretrial jail credit in February 2015. From the time he was incarcerated in December 2001 through December 2014, Petitioner earned a total of 1,153 PSRC. (Doc. No. 22-2 at 5–6.) During the years he was actively serving multiple concurrent sentences, his credits were applied to each of those sentences each month. For example, the 4 credits Petitioner earned in December 2001 (Doc. No. 22-2 at 5) were no doubt reflected on six

---

[4] The Court is aware that these shorter sentences would not be felony sentences, but uses these figures for ease of calculation.

separate Tennessee Offender Management Information System (TOMIS) calculation sheets for Counts 2, 3, 5, 7, 8 and 9, because he was serving all six sentences that month; but they were still only 4 credits, not 24 credits. In fact, an award of 24 credits in a month would violate Tennessee's statutory limit 16 PSRCs per month. Accordingly, Petitioner's claim goes awry when he begins his computation by adding up credits as applied to all six of those sentences. (See Doc. No. 2 at 5.) According to Petitioner's flawed calculation, he had more than 2,300 PSRC by January 2015, which is mathematically impossible in light of his 117 months of incarceration to that point (Doc. No. 22-2 at 5–6),[5] and the monthly PSRC cap of 16.[6] The calculations for the sentences that were shorter than and concurrent with Count 2 are effectively irrelevant; the credits applied to them are the same credits applied to Count 2, and under any circumstances they naturally expired before Count 2 did. Thus, Petitioner's actual PSRC accumulation can be evaluated by looking only at the calculations for his three consecutive sentences for Counts 2, 4 and 6.

As of January 9, 2015, TOMIS calculations indicated that Petitioner had begun serving his 6-year sentence on Count 2 on the date it was imposed, November 29, 2001, and had earned 286 behavior credits and 197 program credits for a total of 483 PSRC toward that sentence, which had flattened that sentence long before the expiration of 6 years. (Doc. No. 201 at 3.) The TOMIS sheets do not reflect expiration dates on individual sentences, but according to Ms. Whisman's affidavit, Petitioner was originally deemed to have flattened his 6-year sentence on Count 2 and begun serving his 12-year sentence on Count 4 on August 3, 2006.[7] (Doc. No. 22-2 at 3.) By

---

[5] Petitioner was out on parole for several years of the intervening time. (Doc. No. 22-2 at 6.)

[6] 117 x 16 = 1,872.

[7] By that point, Petitioner had already flattened all of the shorter, concurrent sentences for Counts 3, 5, 7, 8 and 9, which he had begun serving at the same time as Count 2. Because those sentences were being served at the same time, the PSRC Petitioner earned each month applied simultaneously to all of them, but it took lesser combinations of time served and credits earned to flatten those sentences. Specifically, the TOMIS

7

January 2015, he had earned 670 PSRC toward his then-active 12-year sentence on Count 4. (Doc. No. 2-1 at 4.) At that point, the expiration date of that sentence was projected to be October 2, 2016 (August 3, 2006 + 12 years – 670 days of credit), and would have continued to move up as Petitioner earned additional PSRCs. Specifically, if nothing else had changed, and Petitioner had continued to earn credits at the same rate, Ms. Whisman projects that he would have ultimately earned 871 PSRC to flatten his Count 4 sentence and begun serving his Count 6 sentence on March 15, 2016. (Doc. No. 22-2 at 3.)

But before Petitioner reached that point, the trial court's retroactive award of pretrial jail credits changed the entire calculation. Suddenly, Petitioner was deemed to have started serving his 6-year sentence on Count 2 (as well as the shorter, concurrent sentences for Counts 3, 5, 7, 8 and 9) on November 17, 2000 – approximately a year before the start date used in the previous calculations. Factoring in 377 days of pretrial jail credit for those counts also resulted in the retroactive addition of 96 days of pretrial behavior credit (8 days per month of the pretrial jail time), pursuant to statute. See Tenn. Code Ann. § 41-21-236(e)(1) and (2); (Doc. No. 22-2 at 2). When TDOC recalculated Petitioner's sentences with all of that retroactive credit, it determined that Petitioner had flattened his 6-year sentence on Count 2 on July 29, 2005, approximately a year earlier than previously calculated. (Doc. No. 22-2 at 3.) Petitioner had then begun serving his 12-year sentence on Count 4, and the 103 PSRCs he earned over the next year (see Doc. No. 22-2 at

---

calculations from January 2015 indicate that only 170 total PSRC were required to flatten the 2-year sentences on Counts 3 and 9, 230 PSRC to flatten the 3-year sentence on Count 5, and 311 PSRC to flatten the 4-year sentences in Counts 7 and 8. (Id. at 4–6.) Again, it is important to note that each credit earned is applied to each sentence being served at that time, so the credits applied toward the shorter sentences were the same credits simultaneously applied toward the concurrent longer sentences. Just as in the hypothetical inmate's case, those 311 credits were reflected to some extent on 5 different sentence calculations, but they were still only 311 credits.

5 for credits awarded August 2005 through July 2006), which had previously been applied toward Count 2, were applied to Count 4 instead.

This simple reallocation of credits is apparent in comparing the January 2015 and April 2015 TOMIS calculations for Count 4. In January, only 670 PSRCs had been applied to Count 4. (Doc. No. 2-1 at 4.) By April, Petitioner had only earned 36 more PSRC. (Doc. No. 22-2 at 6.) But the total PSRCs applied to Count 4 as of the April TOMIS report had jumped to 809: 670 (PSRC earned as of January under old calculation) + 36 (new PSRC earned from January to April) + 103 (PSRC previously applied to Count 2 but now applied to Count 4) = 809. (Doc. No. 2-1 at 8.) Petitioner went on to earn 12 more PSRC in April, which flattened his 12-year sentence on Count 4 as of April 30, 2015. (Doc. No. 22-2 at 3, 6.) He began serving his 4-year sentence on Count 6 that day, and had earned 265 PSRCs toward that sentence through October 2016, when Ms. Whisman performed the calculations in her affidavit. (Id. at 3, 6.)

The reallocation is also confirmed by comparing the combined PSRC totals for both Counts 2 and 4 between January and April 2015. The TOMIS calculations indicate that as of January 2015, Petitioner had earned a total of 1,153 PSRCs toward his sentences on Counts 2 and 4,[8] and had not yet started earning credit toward Count 6. (Doc. No. 2-1 at 3–5.) He earned 36 more PSRCs by March 15. (Doc. No. 22-2 at 6.) After his sentences were recalculated, on April 9, 2015, the TOMIS calculation showed a total of 1189 PSRCs had been applied to Counts 2 and 4[9] (Doc.

---

[8] Specifically, Petitioner had been credited with 286 behavior and 197 program credits on Count 2 (Doc. No. 2-1 at 3) and 390 behavior and 280 program credits on Count 4 (Doc. No. 2-1 at 4), for a grand total of 1153 PSRC applied to those sentences.

[9] Not counting the newly awarded pretrial jail and pretrial behavior credits applied to Count 2, Petitioner's April calculation reflects 212 behavior and 168 program credits toward Count 2 (Doc. No. 2-1 at 7) and 482 behavior and 327 program credits toward Count 4 (Doc. No. 2-1 at 8), which amounts to 1189 PSRC for those sentences.

9

No. 2-1 at 7, 8), which accounts for all of the 1153 he had in January, plus the 36 he had earned in the interim. Because of the changes detailed above, those credits were allocated differently between the two Counts, but they were all still applied to reduce Petitioner's sentences.

All of the determinative facts above can be summarized in this simple chart:

|         | January 9, 2015 | April 9, 2015 | October 2016 |
|---------|-----------------|---------------|--------------|
| Count 2 | 483 PSRC        | 380 PSRC      | 380 PSRC     |
| Count 4 | 670 PSRC        | 809 PSRC      | 821 PSRC     |
| Count 6 | 0 PSRC          | 0 PSRC        | 265 PSRC     |
| Total   | 1153 PSRC       | 1189 PSRC     | 1466 PSRC    |

Between January and April, some of Petitioner's existing PSRC had been reallocated from Count 2 to Count 4, but it was all still accounted for, plus he had earned 36 more PSRC. By October 2016, he had earned 277 more credits (Doc. No. 22-2 at 6), almost the maximum that could have been awarded in that time period. In short, the PSRC that Petitioner believes was deleted from his Count 2 calculation was simply shifted to his Count 4 calculation, and any change in credits reflected on the calculations for Counts 3, 5, 7, 8 and 9 is inconsequential, because those credits are merely duplicative of the credits applied to Count 2. The end result of the recalculation is that between January 2015 and April 2015, Petitioner's projected total sentence expiration date for the convictions in question moved from October 2, 2020, to September 9, 2019.[10] (Doc. No. 2-1 at 3,

---

[10] It is not clear to the Court why the addition of 473 days of pretrial jail and behavior credit did not have the effect of moving up Petitioner's expiration date by 473 days, and Ms. Whisman's affidavit does not address the change in expiration date between January and April 2015, except to say that the sentence expiration date "decreased" by the addition of the credit. (Doc. No. 22-2 at 2.) However, Petitioner has focused solely on his PSRC totals and has not raised any question concerning the expiration date itself.

7.) That fact alone plainly establishes that the recalculation did not delete any of Petitioner's credit or work to his disadvantage in any way.

The relevant records thus clearly disprove Petitioner's claim that any PSRC have been deleted from his sentence calculations. This claim has no merit.[11]

### B. Denial of Parole

Petitioner, who has been paroled twice and violated the conditions of his parole twice, complains that the Tennessee Board of Paroles committed a "flagrant abuse of [its] authority" when it denied him parole in February 2016. (Doc. No. 2 at 10.) But he is only entitled to federal habeas relief if he is imprisoned in violation of the federal Constitution or laws. 28 U.S.C. §§ 2241(c)(3), 2254(a). Prisoners do not have any due process liberty interest in early release on parole except where they have "a legitimate claim of entitlement to it," which does not exist in the Constitution and can only be found in state law. Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991) (quoting Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex, 442 U.S. 1, at 7 (1979)) (emphasis in Inmates of Orient). The Sixth Circuit has expressly held that Tennessee law does not create a liberty interest in parole. Wright v. Trammell, 810 F.2d 589, 590–91 (6th Cir. 1987); Tenn. Code Ann. §§ 40–28–117(a) (defining parole as "a privilege and not a right" and holding that if parole board determines that parole is appropriate "the prisoner may be paroled" (emphasis added)). Because Tennessee law does not

---

[11] The Court has reviewed Petitioner's written exchanges with TDOC personnel in his efforts to correct what he perceived as a miscalculation of his credits, and finds it unfortunate that no one ever bothered to discern Petitioner's apparent misunderstanding – that the same credits applied to multiple concurrent sentences were actually hundreds of total credits that went missing in the recalculation – and explain how his sentence calculation works. Even the most thorough response he received failed to address the issue of why the total PSRCs from the TOMIS sheets would appear to go down as the result of the recalculation, and two of them appear to have missed the point entirely. (See Doc. No. 2-1 at 2, 14, 17–18.)

provide any substantive liberty interest in parole, Petitioner has no basis for any habeas challenge to the Board's parole decisions or the procedures surrounding them. Settle v. Tennessee Dep't of Corr., 487 Fed.Appx. 290, 291 (6th Cir. 2012) (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983) and Sweeton v. Brown, 27 F.3d 1162, 1164–65 (6th Cir.1994) (en banc)). This claim has no merit.

## III. PETITIONER'S MOTIONS

Petitioner has also filed a motion to show cause (Doc. No. 26), in which he alleges for the first time that he is being imprisoned based upon judgments that are legally invalid because they do not reflect a "file-stamp." But he acknowledges that each judgment order is signed by the state court judge and bears a "Date of Entry of Judgment." (Id. at 2.) He does not cite any law to support the position that entry of a judgment must be noted by a stamp in lieu of or in addition to a hand-written date, and the Court finds no merit in his argument that his judgments are invalid. The remainder of his motion simply reiterates his claims for habeas relief, which are without merit for the reasons detailed above. This motion will be denied.

Likewise, Petitioner's "petition for writ of mandamus" (Doc. No. 28) reasserts his previous arguments and requests the Court to "forthwith award writ to the Petitioner" or to order Respondent to show cause why the writ should not issue. (Id. at 5.) The Court cannot issue a writ of mandamus to itself. United States v. Bell, No. 1:00-cr-153, 2008 WL 4449910, at *4 (E.D. Tenn. Sept. 29, 2008). The ultimate relief Petitioner seeks in this motion is the relief only available through a writ of habeas corpus. It will therefore be denied for the same reasons already discussed.

## IV.   CONCLUSION

The petition for the writ of habeas corpus will be denied, and this case will be dismissed, for the reasons set forth above.

An appropriate Order shall enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE